**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
SANDRA WOODLEY,                         :
                                        :
            Plaintiff                   :          Civil Action No. 05-0050 (FLW)
                                        :
            v.                          :          **MEMORANDUM OPINION**
                                        :
JO ANNE B. BARNHART                     :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
            Defendant                   :
_____:

**APPEARANCES:**

For Plaintiff:
Alan Polonsky
512 South White Horse Pike
Audubon, NJ 08106

For Defendant:
Susan Reiss
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278


**WOLFSON, United States District Judge**

        Plaintiff, Sandra Woodley, appeals from the final decision of the Commissioner of Social

Security, Jo Ann Barnhart, denying her benefits under Title II of the Social Security Act and

1

under Title XVI of the Social Security Act.  The Court has jurisdiction to hear this matter

pursuant to 42 U.S.C. § 404 (g).

Plaintiff contends that the Administrative Record ("AR") substantiates her claims and

requires a conclusion that she is disabled and, thus, entitled to benefits.  Specifically, Plaintiff

maintains that Administrative Law Judge ("ALJ") Daniel Shellhamer erred by: (1) failing to

account for Plaintiff's psychological issues in his determination of Plaintiff's Residual

Functional Capacity ("RFC"); (2) by failing to take into account all of Plaintiff's limitations (3)

by failing to properly assess the Plaintiff's credibility; and (4) by failing to articulate a sufficient

rationale for rejecting the opinion of Plaintiff's treating physician and the consultative examiner.

 For the reasons stated below, the decision of the ALJ is affirmed and Plaintiff's

complaint is dismissed in its entirety.


I.      BACKGROUND

Plaintiff, Sandra Woodley, is a 59-year-old woman with a high school education and

vocational training as a home health aide.  Plaintiff alleges that she has been disabled since

January 1, 1995[1] when a car crashed into her home causing her to jump out of bed and sustain

injuries.  AR 206, 383.  Prior to her injuries, Plaintiff was employed as a secretary and a home

_____

[1]There is some confusion about dates regarding Plaintiff's eligibility for disability.  For
purposes of this decision, the Court will adopt the dates relied upon by ALJ Shellhamer in his
report and consented to by the Plaintiff during her deposition.  AR 478.  Specifically, although
Plaintiff filed for disability beginning on January 1, 1995, in a decision dated June 8, 1999, ALJ
Oliver found that beginning February 28, 1996, Plaintiff had impairments which made it
impossible for her to perform past relevant work and was therefore "disabled".  AR 384.  Thus,
for simplicity's sake, this Court will consider February 28, 1996 to be the onset date of Plaintiff's
disability.

health aide.  Plaintiff contends that the physical injuries and mental impairments she sustained as a result of the accident have left her disabled.

### A.      Procedural History

On July 19, 1995, Plaintiff filed an application for SSI and Disability alleging the onset of disability beginning January 1, 1995.  These claims were initially denied.  On March 26, 1997, a hearing was held before ALJ Irvin N. Hackerman in Voorhees, New Jersey.  Judge Hackerman determined that although the claimant had a severe impairment, she was able to perform past relevant work and was not entitled to receive disability or SSI.

Plaintiff filed a timely request for review, and, in an Order issued on March 20, 1999, the Appeals Council vacated Judge Hackerman's decision and remanded the matter for further proceedings. On June 8, 1999, ALJ Henry E. Oliver amended the onset date of disability to February 28, 1996[2], as per claimant's request, and determined that Plaintiff was entitled to receive Disability and SSI as of that date. However, on August 6, 1999, the Appeals Council notified Plaintiff that it was reviewing ALJ Oliver's decision because his findings were not supported by substantial evidence.   In an Order issued on January 14, 2000, the Appeals Council vacated Judge Oliver's decision and remanded the case for further proceedings.

Thereafter, on June 28, 2000, ALJ Shellhamer held a hearing at which both Plaintiff and Dr. Robert Askin, an impartial medical expert, appeared and testified.  Following the hearing, in a decision dated February 20, 2001, ALJ Shellhamer determined that although Plaintiff had severe impairments, she was able to return to her past relevant work, and therefore, she was not

---

[2]See fn 1.

disabled and not entitled to Disability or SSI payments.

On April 24, 2001, Plaintiff filed a timely request for review which made its way up to the U.S. District Court of New Jersey.  On November 25, 2002, the parties consented to a voluntary remand of the matter to the Office of Hearings and Appeals, and, in turn, the Council vacated the adverse decision on April 24, 2003 and remanded the matter to the hearing level for further proceedings.

ALJ Shellhamer held a second hearing on October 28, 2003.  At that time, Plaintiff appeared and testified as did Sonya Mocarski, an impartial vocational expert.  In a decision dated October 1, 2004, ALJ Shellhamer determined that Plaintiff's ailments did not preclude her from returning to her past work as a secretary, and therefore, that Plaintiff was not disabled. Thereafter, the Appeals Council denied Plaintiff's Request for Review, and  Plaintiff instituted the instant appeal, seeking reversal of the Commissioner's decision and a determination that she is disabled and entitled to disability benefits.

### B.    Medical Evidence

Plaintiff alleges that she became disabled as a result of an accident in which a car crashed into the bedroom of her house. Plaintiff has seen numerous physicians since the accident; indeed, ALJ Shellhamer's summary of the medical evidence alone continues for over nine pages.  Thus, this Court will not recite in detail the totality of Plaintiff's medical history.  Instead, the Court will attempt to briefly summarize the relevant medical evidence.

After the accident, Plaintiff initially received treatment from a general practitioner, Anton P. Kemps, M.D., who referred her to an orthopedist for her complaints.  Thereafter, Plaintiff saw

Kenneth P. Heist, D.O., an orthopedist, on January 23, 1995.  Dr. Heist determined that Plaintiff was suffering from a decrease of sensation in her left forearm as well as a restriction of the cervical area that limited side bending and rotation.  Plaintiff's injuries did not improve and she sought follow up care from various doctors and chiropractors.

On March 15, 1995, Plaintiff saw Joseph J. Chelowski, a chiropractor, who diagnosed Plaintiff with cervical sprain with brachial ridiculoneuritis.  Dr. Chelowski recommended several months of chiropractic treatment. Unfortunately, the chiropractic treatment did not provide sufficient relief, and Plaintiff continued to take medication to control her pain.

On May 12, 1995, Dr. Kemps indicated that Plaintiff would not able to work at her regular occupation, and he estimated a recovery date of July 5, 1995.  An EMG performed on July 14, 1995 revealed no electrophysiologic evidence of radiculopathy or nerve root injury, however, Plaintiff continued to complain of pain.  On August 20, 1995, Dr. Kemps reported  that Plaintiff was still unable to work and, at that time, Dr. Kemps estimated a new recovery date of September 1, 1995.  On October 30, 1995, Dr. Kemps reported that Plaintiff had sustained an injury to her cerviotrapezial region on the left side which was not amenable to treatment. Further, Dr. Kemps reported that Plaintiff was unable to functionally lift and perform repetitive activities with her left arm.

On June 11, 1996, Plaintiff saw C.A. Vitola, D.O., a general practitioner for back pain. Plaintiff saw Dr. Kemps again on September 10, 1996, and Dr. Kemps noted that Plaintiff was still suffering from persistent pain requiring medication.  Moreover, Dr. Kemps noted that Plaintiff had suffered a disruption with disc herniation and had residuals of chronic cervical and left trapezius pain.

5

More than a year later, on September 27, 1997, Dr. Kemps reported that Plaintiff had been suffering from chronic anxiety syndrome and high blood pressure prior to the accident. Moreover, Dr. Kemps noted that since the injury, Plaintiff could only lift 10-15 pounds, walk 10-15 minutes, stand for 10 minutes and sit for 30 minutes.  Moreover, Dr. Kemps indicated that Plaintiff could not reach overhead, especially with her left arm, could bend occasionally and could not do household activities. He also advised Plaintiff to seek psychological counseling to deal with the emotional distress stemming from the accident.

On February 9, 1998, Dr. Mark L. Kahn, an orthopedist, performed a medical evaluation of the Plaintiff.  Dr. Kahn noted that although Plaintiff presented subjective complaints, there were no objective findings to support her complaints.  Moreover, Dr. Kahn  reported that an MRI revealed that Plaintiff had a herniated disc and mild cord impingement, however, the herniated disc was not causing objective or physical findings at the time.  He also indicated that the claimant had reached maximum medical improvement.

On May 15, 1998, Dr. Stephen Boyajian, a pain management specialist, diagnosed Plaintiff with chronic cervical radiculopathy.  Following an epidural steroid injection, Plaintiff reported approximately 40 percent relief of her symptoms, and Dr. Boyajian recommended further steroid injections. In addition, Plaintiff saw Dr. Rocco J. Santarelli, a sleep disorders specialist on October 7, 1999; Dr. Santarelli diagnosed Plaintiff with moderate obstructive sleep apnea.

 At a hearing in front of ALJ Shellhamer on June 28, 2000, Dr. Askin, an impartial medical expert who the Court requested appear as a medical expert at the hearing, testified that Plaintiff's complaints and her description of her exertional limitations did not correlate with the

6

objective medical evidence on the record.  In addition, Dr. Askin suggested that Plaintiff's sleep problems might be caused by the various medications she was taking to control her symptoms.

In July 2001, Dr. Kemps took an MRI of Plaintiff's cervical spine.  The MRI revealed degenerative changes and Dr. Kemps diagnosed Plaintiff with cervical disk disease and possible carpal tunnel syndrome.  In March 2002, Plaintiff complained of right knee pain and swelling. Following another MRI, Plaintiff was diagnosed with early degenerative change and prepatellar bursitis that was treated with physical therapy and medication.  In November 2002, a second MRI of Plaintiff's cervical spine revealed mild spondylosis.

On June 13, 2003, Dr. Kemps completed a residual functional capacity questionnaire in which he estimated that Plaintiff could lift up to 19 pounds occasionally and 9 pounds frequently, could walk for one hour, stand for two hours and sit for 4 hours during an 8 day workday.  AR 440.  He indicated that Plaintiff was limited to occasional pushing and pulling with her hands, to frequent pushing and pulling using her legs, and that Plaintiff could bend and reach occasionally, but could not climb, squat or crawl.

 At the hearing on October 28, 2003, Plaintiff testified that she had a herniated disc in her neck and suffered from neck, shoulder and arm pain, sleep problems, stomach and back problems, headaches, anxiety and carpel tunnel.  Moreover, Plaintiff estimated that she could only stand for ½ hour, walk less than 1 block comfortably, and sit for only 15-20 minutes. Although Plaintiff noted that she had difficulty dressing and that she did not like to drive because of neck pain, she could do some household chores like dusting and laundry.  Moreover, Plaintiff indicated that she went food shopping with her husband.

7

C.     **Mental Health Evidence**

On September 27, 1997, Dr. Kemps reported that Plaintiff had  suffered from high blood pressure and chronic anxiety syndrome prior to her injury**.**  In December 1999, Plaintiff began receiving outpatient treatment for depression from Dr. William Pollard, Ph.D.  The doctor's initial impression was major depression, underline single episode, moderate.  Dr. Pollard saw Plaintiff on five occasions, through February 8, 2000, and recommended that Plaintiff utilize relaxation techniques to combat her anxiety. On March 7, 2000, Dr. Joseph N. Mobilio, D.O., performed a consultative mental status examination on Plaintiff.  At that time, Plaintiff reported no psychiatric history, but noted that she had received Prozac from her family physician since 1995. In addition, Plaintiff complained of a loss of concentration and focus.  In his report, Dr. Mobilio described Plaintiff's judgment as adequate but noted that she had some avoidance and social withdrawal symptoms as well as increased startle response and symptoms of depression and anxiety.  Dr. Mobilio advised that Plaintiff's condition would remain the same unless she got more aggressive pain management or surgery and more aggressive treatment of her depression.

Three years later, on June 16, 2003, Dr. Kemps completed a statement regarding Plaintiff's ability to do work-related activities (mental).  In this opinion, Dr. Kemps rated Plaintiff's mental ability as good in 16 areas, fair in four areas, and poor in four areas. AR 443-444.  Specifically, Dr. Kemps indicated that Plaintiff had poor or no ability to maintain attention for two hour segments, complete a normal workday without interruptions from psychologically based symptoms, and to understand, remember and carry out detailed instructions.  Thereafter, at a hearing on October 28, 2003, Plaintiff indicated that she had a history of anxiety commencing prior to her injury and that she had problems concentrating.  However, Plaintiff admitted that she

8

had not sought counseling for her anxiety.

At the request of ALJ Shellhamer, Dr. Young B. Lee performed a consultative mental status examination of Plaintiff on March 9, 2004.  Similar to Dr. Kemps, Dr. Lee completed a statement of Plaintiff's ability to do work related activities and rated her psychiatric impairment.  According to Dr. Lee's report, Plaintiff was not markedly or extremely limited in any areas.  In addition, Dr. Lee indicated that Plaintiff was only <u>moderately</u> limited in her ability to interact appropriately with the public, supervisors and co-workers, respond appropriately to work pressures, and respond to changes in routine work setting.  Moreover, Dr. Lee noted that Plaintiff's abilities to understand, remember and carry out detailed instructions and to make simple work-related decisions were only <u>slightly</u> limited. AR 471-472.

## II.   DISCUSSION

### A.   Standard of review

The Social Security Act ("the Act") provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g); see also <u>Matthews v. Apfel</u>, 239 F.3d 589, 592 (3d Cir. 2001).  On the issue of whether there is substantial evidence to support a decision, this court's review is "highly deferential."  <u>Jones v. Barnhart,</u> 364 F.3d 501, 503 (3d Cir. 2004).

9

However, it is the duty of the court to scrutinize the entire record to determine whether the Commissioner's findings are rational and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (emphasis added).  Substantial evidence is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Therefore, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

**B.      Standard for entitlement of benefits**

Disability insurance benefits may not be paid under the Act unless the plaintiff first meets the statutory requirements.  See 42 U.S.C. § 423(c).  A plaintiff must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for an ALJ's evaluation of whether a

10

person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant

has shown that she is not currently engaged in "substantial gainful activity."  20 C.F.R. §

404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently

engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R.

§ 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the

claimant has demonstrated a "severe impairment" or "combination of impairments" that

significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §

404.1520(c); see Bowen, 482 U.S. at 146-47 n.5.  Basic work activities relate to "the abilities and

aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical

functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

handling."  Id.  A claimant who does not have a severe impairment is not disabled.  20 C.F.R. §

404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the

ALJ determines whether the impairment meets or is equal to those impairments listed in the

Impairment List.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that her

impairments are equal in severity to or meet those on the Impairment List, the claimant has

satisfied her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. §

404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the claimant is not conclusively

disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the

claimant must prove at step four whether she retains the residual functional capacity to perform

her past relevant work.  20 C.F.R. §§ 404.1520(d); Bowen, 482 U.S. at 141.  If the claimant is

able to perform her previous work, the claimant is determined not to be disabled.  20 C.F.R. §§

404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of

demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.

Finally, if it is determined that the claimant is no longer able to perform her previous work, the

burden of production then shifts to the Commissioner to show, at step five, that the "claimant is

able to perform work available in the national economy."  Bowen, 482 U.S. at 146-47 n.5;

Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual

functional capacity, age, education and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ

must analyze the cumulative effect of all the claimant's impairments in determining whether the

claimant is capable of performing work and not disabled.  Id.


### C.    Decision and findings of the ALJ

The ALJ determined that Plaintiff  was able to perform her past relevant work and that

Plaintiff was not under a disability as defined in the Social Security Act at any time through the

date of the instant decision. AR 397.   After consideration of the entire record, the ALJ made the

following findings:

1. The claimant met the non-disability requirements for a Period of Disability and

Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act, and was

insured for benefits only through December 31, 1999.

2. The claimant has not engaged in substantial gainful activity since February 28, 1996

(i.e. the amended onset date of disability.)

3. The claimant's left shoulder problems, anxiety, and neck, right shoulder and right arm

pain are considered "severe" based on the requirements in the Regulations (20 C.F.R. §§

404.1520(c) and 416.920(c)).

12

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No.4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform a full or wide range of sedentary exertional level work; i.e. she can lift and carry 10 pounds occasionally and 5 pounds frequently, and can stand and/or walk for 2 hours and sit for up to 6 hours during an 8-hour workday.  However, the claimant requires the option to periodically change positions to relieve discomfort; is limited to only occasional overhead reaching using her left arm; and has postural limitations which restrict her to only occasional balancing, stooping, kneeling, crawling and climbing.

7. The claimant's past relevant work as a secretary did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

8.  The claimant's medically determinable left shoulder problems; anxiety; and neck, right shoulder and right arm pain, do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(3) and 416.920(e)).

**D.  Plaintiff's Claims on Appeal**

On appeal, Plaintiff contends that ALJ Shellhamer erred when he denied Plaintiff's claim; specifically, Plaintiff argues that the ALJ did not: (1) properly consider Plaintiff's psychological

issues in his determination of Plaintiff's residual functional capacity; (2) take into account all of Plaintiff's limitations (3) properly assess Plaintiff's credibility; and (4) failed to articulate a sufficient rationale for rejecting the opinion of Plaintiff's treating physician and the consultative examiner.  For the reasons stated below, the Court finds these arguments without merit.

**1. The ALJ Properly Considered Plaintiff's Psychological Problems in Determining Her Residual Functional Capacity**

The Residual Functional Capacity ("RFC") is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work.  SSR 96-8p.  A claimant's RFC is determined by the ALJ using "all the relevant medical and other evidence" in the claimant's record.  20 CFR 404.1520(e).  According to the Social Security Administration, "the RFC assessment is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p.  In other words, the RFC is an administrative assessment of the extent to which an individual's medically determinable impairments, or combination of impairments, may cause physical or mental limitations or restrictions that may affect her capacity to do work-related physical and mental activities on a continuing basis.  <u>Id.</u>   Importantly, at step four of the evaluation, the burden is on the Plaintiff to show that she is unable to perform her past relevant work.  <u>See e.g.</u>, <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 39 (3d Cir. 2001) ("Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. . . The claimant bears the burden of demonstrating an inability to return to her past relevant work.").

14

In the instant matter, Plaintiff alleges that the ALJ did not properly consider Plaintiff's psychological issues when he determined that Plaintiff had the RFC to perform a full range of sedentary work including her past relevant work as a secretary.  Specifically, Plaintiff alleges that the ALJ did not consider the extent to which Plaintiff's psychological issues limited Plaintiff's RFC.  The Court does not agree.

First, the Court notes that the ALJ engaged in a thorough discussion of all the medical evidence in the record. Indeed, as noted earlier, the ALJ's summary spanned more than nine pages.  Moreover, in determining Plaintiff's limitations, the ALJ considered the reports of Drs. Kemps, Mobilio, Askin and Lee.  On the whole, the ALJ determined that these reports established that although Plaintiff suffered from some mild restrictions in maintaining social functioning and concentration, the record did not establish that Plaintiff suffered from a marked restriction in her daily activities, social functioning or maintaining concentration.  Specifically, in a report dated June 13, 2003, Dr. Kemps rated Plaintiff's ability to perform work-related activities (mental) as good in 16 of 25 areas including the ability to interact appropriately with the general public, to maintain socially appropriate behavior, and to deal with the stress of skilled and semi skilled work.  AR 444.  Similarly, Dr. Lee's March 2004 report established that Plaintiff had no limitations in her ability to understand, remember and carry out simple instructions.  AR 471.  Dr. Lee noted that Plaintiff only had slight limitations with respect to her ability to understand, remember and carry out detailed instructions and her ability to make judgments.  Moreover, Dr. Lee noted that Plaintiff was only moderately limited with regard to her abilities to interact with the public, supervisors and coworkers and respond to work pressures.

AR 472.   Notably, Dr. Lee did not find that Plaintiff had any marked or extreme limitations in

any areas.  AR 472.   In addition, Dr. Lee's narrative report established that Plaintiff showed

"no signs of a thinking disorder or memory impairment.  There are no signs of affective

disorder noted.  She is able to follow directions.  Interpersonal relationships are limited, but not

impaired. . . . Psychiatric impairment seems to be mild."  AR 469-470.

Furthermore, in his opinion, the ALJ determined that the relevant impairment that is most

closely linked with Plaintiff's anxiety disorder is Section 12.06 – Anxiety related disorders.  AR

387.  This listing requires that Plaintiff's condition result in at least two of the following: marked

restriction of daily activities; marked difficulties in maintaining social functioning; and/or

marked difficulties maintaining concentration.  AR 387.  In the report dated June 13, 2003, Dr.

Kemps found that Plaintiff's ability to understand, remember and carry out detailed instructions

was poor.  AR 444.  The ALJ found that this was not sufficient to meet the listed impairment as

required by section 12.06.  However,  even if the ALJ had determined that this was a marked

limitation as required by Section 12.06, Plaintiff has not established a marked difficulty in

another area as required by the standards in Section 12.06 above.  Therefore, Plaintiff has not met

the requirements of Section 12.06.  For all these reasons, the Court finds that the ALJ properly

considered the medical evidence in the record including evidence of psychological impairments

in determining that Plaintiff was not disabled.

**2. The ALJ Properly Considered All of Plaintiff's Limitations**

Next, Plaintiff alleges that the hypotheticals posed by the ALJ to the vocational expert did

16

not accurately reflect her limitations because the hypotheticals did not include certain findings he made regarding Plaintiff's RFC.  Specifically, Plaintiff argues that the ALJ failed to incorporate any "significant functional limitation" based on Plaintiff's psychological issues.  Generally, "great specificity" is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical.  Ramirez v. Barnhart, 372 F.3d 546,554-55 (3d Cir. 2004).  If a record contains undisputed evidence of specific medical impairments that are not included in the hypothetical to the vocational expert, the expert's response will not be considered substantial evidence.  Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).  Despite the requirements for posing hypothetical questions to vocational experts, an ALJ's decision to use a vocational expert at step four of the evaluation is discretionary.  20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work.") Thus, a vocational expert's testimony is not dispositive, and, at best, an ALJ's failure to include all relevant limitations in a hypothetical results in the ALJ's inability to consider the answers substantial evidence.  See Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Chrupcala v. Heckler, 829 F.2d 1269 (3d Cir. 1987).

In the instant matter, Plaintiff argues that because the ALJ failed to incorporate Plaintiff's psychological impairments in the hypothetical he posed to Ms. Mocarski, the Vocational Expert, the ALJ could not properly rely on expert's answers in determining Plaintiff's residual functional capacity.  However, the Court does not even need to reach the question of whether the vocational

expert's answers could be considered substantial evidence because the Court finds that the testimony of a vocational expert was not required in the instant case.  As noted earlier, at step four of the evaluation, Plaintiff has the burden of showing that she has an impairment that is so limiting that she is unable to perform her past relevant work. <u>Fargnoli v. Massanari</u>, 247 F.3d at 39.  Moreover, as discussed above, the record has not established that Plaintiff's mental impairment would preclude her from performing her past relevant work as a secretary.  Furthermore, Plaintiff explained that her typical job duties included secretarial tasks such as typing, filing, answering phones and placing orders.  Tr. 181-184.  However, the reports from Dr. Lee and Dr. Kemps that discuss Plaintiff's psychological limits are consistent with finding that Plaintiff is able to perform these tasks.

Moreover, Plaintiff has not met the burden of showing that she was unable to perform the physical demands of her job as a secretary.  The Dictionary of Occupational Titles characterizes the job of secretary as sedentary work. U.S. Department of Labor, DOT 171 (code no. 201.362-030)(4th ed. 1991).  Thus, the ALJ's determination that Plaintiff is able to perform a wide range of sedentary exertional level work including lifting and carrying 10 pounds occasionally and 5 pounds frequently, that she can stand or walk for 2 hours and sit for up to 6 hours during an 8-hour workday is consistent with her past relevant work.  Moreover, the only limitations the ALJ placed on Plaintiff's ability to perform relevant work were minor including a requirement that Plaintiff be able to change positions to relieve discomfort, and limits on Plaintiff's use of her left arm to reach overhead.  For all these reasons, the Court holds that the ALJ's failure to include Plaintiff's psychological limits in the hypotheticals was of no consequence because Plaintiff did not meet her burden of showing the inability to return to her past work as a secretary.

18

Additionally, the Court notes that even without the evidence of the Vocational Expert, the record contains substantial evidence to uphold the ALJ's findings.

### 3. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff also challenges the ALJ's findings regarding Plaintiff's credibility.  Generally, courts are loath to overturn the credibility determinations of ALJs who hear live testimony and provide specific reasons for questioning a Plaintiff's credibility. See Irelan v. Barnhart, 243 F. Supp.2d 268, 284 (E.D. Pa.2003) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) ("[The] ALJ is empowered to evaluate the credibility of witnesses, and his findings on the credibility of claimants 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'")).  Reviewing courts typically defer to an ALJ's determination of credibility because an ALJ has the opportunity to assess the Plaintiff's demeanor during a hearing.  See, e.g. Atl. Limousine, Inc. v. NLRB, 243 F.3d 711, 718 (3d Cir. 2001).  However, an ALJ may not base a decision regarding credibility on "an intangible or intuitive notion about an individual's credibility." SSR 96-7P at 4.  The ALJ's decision must contain specific reasons for credibility findings, "supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Schwartz v. Halter, 134 F.Supp.2d 640, 654 (E.D. Pa. 2001).

Moreover, when considering a Plaintiff's subjective complaints, the Third Circuit requires that courts give these complaints "serious consideration." Mason. v. Shalala, 994 F.2d

19

1058, 1067 (3d Cir.1993); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981).  However, an ALJ

need only consider a claimant's subjective symptoms, including pain, to the "extent to which

[claimant's] symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence." 20 C.F.R. § 404.1529.  If objective medical evidence does not

support a claimant's allegations, the ALJ may consider: (1) claimant's daily activities; (2) nature,

location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating or

aggravating factors; (4) the type of medication and other treatments the plaintiff uses to relieve

their pain.  20 C.F.R. § 416.929 (c)(3); SSR 96-5p.

In the instant matter, Plaintiff contends that the ALJ did not properly consider Plaintiff's

subjective complaints in his determination that Plaintiff was not disabled.  The Court does not

agree.  Here, the ALJ considered all the relevant medical evidence and found that "[t]he

claimant's allegations concerning her impairments, pain and other symptoms, and their impact on

her ability to work. . .are not entirely credible in light of the reports of the treating and examining

practitioners." AR 395.  Specifically, as discussed above, many of the treating and examining

physicians determined that the objective medical evidence did not correlate to Plaintiff's

subjective complaints[3].  Moreover, in addition to his consideration of all the medical evidence,

the ALJ considered Plaintiff's daily activities.  For example, the ALJ noted that although

Plaintiff "did not like to drive because of neck pain," she could do household chores like dusting,

laundry and food shopping.  AR 395.  In addition, the ALJ noted that Plaintiff "sat without

discomfort during the hearing and answered the questions well." AR 395.  Finally, it is

important to note that the ALJ did not entirely discount Plaintiff's subjective complaints.  Indeed,

_____

[3]See reports of Dr. Kahn and Dr. Askin, supra, at 6.

the ALJ credited Plaintiff's subjective complaints of pain to the extent that although he determined that Plaintiff could perform her past relevant work, Plaintiff is limited in the use of her left arm to reach overhead, restricted to only occasional balancing, stooping, kneeling, crawling and climbing, and required to have the option to change seated position to relieve any discomfort.  AR 398.  Thus, this Court finds that the ALJ properly considered Plaintiff's subjective complaints.

Plaintiff additionally attacks the ALJ's assessment of her credibility based on the ALJ's observation that, at the hearing, Plaintiff had some difficulty turning her head, but otherwise sat without discomfort.  Plaintiff contends that these observations amounted to the ALJ engaging in the prohibited "sit and squirm" test and relying solely on his own observations of the Plaintiff to the exclusion of all other evidence of Plaintiff's disability. See Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983) (remanding a case to the District Court where the ALJ "could only have reached his conclusion by relying solely on his own non-expert observations at the hearing-in other words, by relying on the roundly condemned "sit and squirm" method of deciding disability cases." ).  The Court, however, does not agree.

To begin, Plaintiff is correct in noting that the ALJ made some observations about her comfort and her ability to participate at the hearing over which he presided.  As noted above, the ALJ observed that Plaintiff had some difficulty turning her head at the hearing but that she otherwise sat without discomfort and was able to answer questions well.  AR 395.  Unlike the ALJ in Van Horn, however, in the instant case, the ALJ did not rely solely on these observations in finding that Plaintiff was not disabled.  Instead, the record in this dispute is replete with the ALJ's consideration of all the medical and non-medical evidence.  The ALJ's observation about

21

Plaintiff's comfort was simply one of many factors that led to the conclusion that Plaintiff's subjective complaints were not entirely credible to the extent alleged.  Indeed, the ALJ's opinion contains more than nine pages discussing the reports of the physicians who examined and treated Plaintiff, and, it is these reports which form the basis for the ALJ's findings concerning Plaintiff's credibility.  In addition, as noted above, the ALJ considered non-medical evidence such as Plaintiff's ability to drive, do laundry, dust, and go food shopping, as well as her social activities such as going out to dinner with her husband and regular visits and phone calls with friends and relatives.  AR 469.  For all these reasons, I find that the ALJ did not subject Plaintiff to an unlawful "sit and squirm" test.  Thus, the Court holds that the ALJ's determination of Plaintiff's credibility was properly based on both Plaintiff's subjective complaints and the objective medical evidence.

**4. Whether the ALJ Properly Articulated a Sufficient Rationale for Assigning Reduced Weight to Various Medical Opinions.**

Finally, Plaintiff contends that the ALJ did not properly evaluate and weigh the reports of Dr. Kemps, one of Plaintiff's treating physicians, and Dr. Mobilio.  A cardinal principle guiding disability eligibility determinations is that an ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)).   However, an ALJ may afford a treating physician's opinion more or less weight depending upon the extent to which

supporting explanations are provided, and an ALJ may reject a treating physician's opinion outright on the basis of contradictory medical evidence. Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985). In the instant dispute, Plaintiff alleges that the ALJ improperly rejected the opinions of Dr. Kemps and Dr. Mobilio in favor of the reports of Drs. Askin and Lee. The Court does not agree.

In his decision, ALJ Shellhamer explained that he was assigning the reports of Dr. Kemps and Dr. Mobilio reduced weight "based on a review of the entire record, including the testimony of Dr. Askin, the impartial Medical Expert and a teaching orthopedic surgeon who performed primarily upper extremity surgery. . . and the recent consultative mental status examination of Dr. Lee, a psychiatrist. The undersigned believes that the opinions of these specialists are entitled to greater weight that [sic] the opinions of a general practitioner and a psychologist." Thus, the ALJ did not, as Plaintiff suggests, reject the opinions of Dr. Kemps and Dr. Mobilio. Instead, the ALJ merely assigned these reports less weight than he assigned to the reports of Dr. Askin and Dr. Lee, and, as explained by the court in Newhouse, an ALJ may assign more or less weight to a physician's report as long as sufficient supporting explanation is provided. In the instant matter, the Court finds that the ALJ provided a thorough discussion of all the medical evidence relating to Plaintiff's alleged disability. For example, as noted above, the ALJ's discussion of Plaintiff's medical history encompassed more than nine pages of his decision. In addition, in explaining his decision regarding the weight he assigned to the physician's reports, the ALJ explained that he believed the opinions of Dr. Askin, an impartial medical expert, and Dr. Lee, a psychiatrist who performed the most recent mental evaluation of Plaintiff in March 2004 were entitled to greater weight than the opinions of Dr. Kemps, a general practitioner and Dr. Mobilio, a D.O. who

examined the Plaintiff in 2000.  Furthermore, the ALJ noted that Dr. Kemps had rated Plaintiff's

abilities as "good" in a majority of areas, and, therefore, that a "preponderance of the evidence is

simply not consistent with [Dr. Kemps] rating the claimant as having poor or no ability in five

different activities."[4]  AR 396.  Moreover, Dr. Kemps' older assessment conflicts with the more

recent examination of Plaintiff by Dr. Lee who found that Plaintiff displayed no signs of a

thinking disorder or memory impairment, that she was able to follow directions and maintain

meaningful conversations and that any psychiatric impairment was mild.  AR 469.

Finally, despite Plaintiff's argument that there is some significance to the ALJ's

misidentification of Dr. Mobilio, as a psychologist, and not as a psychiatrist, the Court finds that

this misidentification is of no consequence.  The ALJ properly considered Dr. Mobilio's opinion

and afforded it less weight based on the entire record.  For example, Dr. Mobilio rated Plaintiff's

ability as excellent, good and fair in 18 areas and as poor in five areas.  AR 283-284.  Further,

Dr. Mobilio noted that Plaintiff's psychological limitations were a result of her pain, AR 281,

and that her poor endurance was a result of her poor sleep habits.  AR 283.  However, as

discussed above, the ALJ had determined that Plaintiff's subjective complaints of pain were not

entirely credible.  Thus, in light of the contradictory evidence surrounding Plaintiff's mental

capacity and because the ALJ provided substantial explanations for rejecting the opinions of Dr.

---

[4]Dr. Kemps rated Plaintiff's ability as good in the majority of areas including, but not limited to, her ability to remember work-like procedures, to understand and carry out simple instructions, to sustain a routine without special supervision, to work in coordination with others, to make work related decisions, to get along with co-workers and to interact appropriately with public.  In addition, Dr. Kemps rated Plaintiff as "fair" in other areas including her ability to deal with normal work stress.  Finally, Dr. Kemps rated Plaintiff as having poor or no ability to maintain attention for two hour segments, to perform at a consistent pace without an unreasonable number of rest periods, and to understand and carry out detailed instructions.  AR 393-94, 443- 444.

Kemps and Dr. Mobilio, I find that the ALJ provided sufficient explanation for his decision regarding the weight he assigned to the various medical experts, and that the ALJ properly weighed the medical opinion evidence.

**III.    CONCLUSION**

For the reasons set forth above, the Court find that the ALJ's decision is supported by substantial evidence in the record.  Therefore, the ALJ's decision will be affirmed and Plaintiff's complaint shall be dismissed in its entirety.  An appropriate order shall follow.

Dated: February 14,2006                        /s/ Freda L. Wolfson
                                               Honorable Freda L. Wolfson
                                               United States District Judge